UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| REGINA LAJAUNIE AND MICHAEL LAJAUNIE<br><br>*Plaintiffs*<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.;<br>SUPERIOR VAN & MOBILITY, LLC;<br>THE BRAUN CORPORATION; AND<br>ELECTRONIC MOBILITY CONTROLS, L.L.C.<br><br>*Defendants* | § CIVIL ACTION NO:<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1. Plaintiffs, Regina Lajaunie and Michael Lajaunie, are individuals that now and have been at all relevant times citizens of the state of Louisiana.

2. Defendant, American Honda Motor Co., Inc., hereinafter "Honda," is a corporation organized under the laws of California with its principal place of business in Torrance, California. Honda is a warrantor of the vehicle purchased by Plaintiffs and is a merchant with respect to goods of the kind at issue.

Honda's agent for service of process is Corporation Service Company, 450 Laurel Street, 8th Floor, Baton Rouge, LA 70801.

3. Defendant, Superior Van & Mobility, LLC, hereinafter "Superior," is a limited liability company organized under the laws of Kentucky and authorized to do business in

Louisiana, engaged in the sale, modification, and servicing of wheelchair-accessible vehicles, including the vehicle at issue in this matter.

Superior's agent for service of process is Capitol Corporate Services, Inc., 8550 United Plaza Building II, Suite 305, Baton Rouge, Louisiana 70809.

4.      Defendant The Braun Corporation, hereinafter "Braun," is a corporation organized under the laws of Indiana and registered to do business in Louisiana as The Braun Corporation of Indiana. Braun does business as BraunAbility and is engaged in the design, manufacture, distribution, and installation of wheelchair-accessible vehicle conversions and mobility equipment, including the accessibility systems installed in the vehicle at issue.

Braun's agent for service of process is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

5.      Defendant, Electronic Mobility Controls, L.L.C., hereinafter "EMC," is a limited liability company organized under the laws of the state of Maine engaged in the design, manufacture, and distribution of adaptive driving equipment, including electronic hand control systems and related components installed in the vehicle at issue.

EMC's agent for service of process is Matthew D. Stein, 254 Commercial Street, Portland, Maine 04101.

**II. Jurisdiction**

6.      This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

## III. Venue

7.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

8.      All conditions precedent have been performed or have occurred.

## V. Facts

9.      Plaintiffs purchased a 2024 Honda Odyssey, VIN 5FNRL6H63RB035544 (the "Subject Vehicle"), on July 29, 2025, from Defendant Superior Van & Mobility, LLC ("Superior") in St. Rose, Louisiana for approximately $144,742.47. At the time of sale, the vehicle had approximately 498 miles. As sold, the vehicle consisted of (a) the original equipment manufacturer Honda Odyssey chassis and vehicle systems; (b) a wheelchair-accessible conversion, including an in-floor ramp system and sliding door modifications manufactured by Defendant Braun Corporation ("Braun"); and (c) adaptive driving and electronic control systems, including steering, braking, and control interfaces manufactured by Defendant Electronic Mobility Controls, LLC ("EMC"). Superior acted as the selling dealer and undertook the installation, configuration, and integration of these components into a single vehicle intended for immediate use by Plaintiffs.

10.      The Subject Vehicle was marketed, sold, and delivered as a fully integrated system in which the Honda vehicle, the Braun conversion components, and the EMC adaptive controls were intended to function together as a single operable unit. At the time of delivery and during the initial fitting process, however, Superior had not completed installation and configuration of the adaptive systems in a manner that permitted safe and functional operation. Components requiring precise positioning, including seat bases, wheelchair docking systems, and driver control

interfaces, were initially installed in incorrect locations, requiring removal, relocation, and reinstallation after delivery. These corrective efforts included repositioning docking stations, modifying mounting points, and replacing or adjusting seat base components. Superior also represented that certain features, including interchangeable seating configurations and integrated operation of vehicle systems through the adaptive interface, would be functional upon delivery, but those features were not operational when Plaintiffs received the vehicle.

11.    In the weeks immediately following delivery, Plaintiffs returned the vehicle to Superior multiple times for correction of installation and integration issues. Service documentation characterizes these efforts as "rework," including relocation of wheelchair docking systems, correction of seat base alignment and locking mechanisms, adjustment of EMC gas and brake control assemblies, and modification of wiring and control connections associated with the adaptive systems. These corrective efforts involved, among other things, plugging prior mounting locations, relocating docking stations, adjusting control resistance, and modifying OEM system settings. After each return, the same or similar issues recurred shortly after the vehicle was placed back into use, indicating that the underlying installation and integration deficiencies were not resolved.

12.    The adaptive driving system supplied by EMC, including steering, braking, and electronic control modules, did not function reliably as installed and configured at delivery, including during operation alongside the vehicle's OEM systems. Plaintiffs experienced repeated instances in which switching between the OEM driving configuration and the EMC adaptive system caused the vehicle to fail to respond properly to driver inputs, generated error conditions, or required resetting by the dealer before the vehicle could be operated. Plaintiffs also required repeated adjustments to the gas and brake controls and steering configuration due to improper

positioning or inconsistent operation. In addition, certain vehicle functions, including remote start programming and other electronic features, were not compatible with the EMC system as installed, and required ongoing diagnostic efforts and coordination between Superior and EMC without a permanent resolution.

13.     The wheelchair-accessible ramp and sliding door system associated with the Braun conversion did not operate reliably. The sliding door would intermittently fail to open or close fully, which in turn prevented proper deployment of the ramp. Service efforts included adjustment of door alignment components and related hardware to address interference and incomplete closure conditions. Despite these adjustments, the door and ramp system continued to malfunction on subsequent use. During one such occurrence, the sliding door failed to open fully and the ramp did not deploy when expected. Plaintiff, relying on the expected deployment of the ramp to exit the vehicle, proceeded to exit and lost support when the ramp failed to deploy, resulting in a fall from the vehicle.

14.     The electrical and control systems within the Honda vehicle did not operate as a stable system in the condition in which the vehicle was delivered and configured. Plaintiffs experienced repeated battery and power-related issues, including instances in which the vehicle failed to shut down properly and subsequently lost power. Service efforts identified loose or improperly secured electrical connections following installation of the adaptive systems, including battery-related connections that required re-securing. Plaintiffs also experienced irregular operation of the vehicle's electronic display and control systems, including conditions in which the vehicle displayed conflicting gear indications and required multiple attempts to shift between operating modes. These issues occurred repeatedly and required diagnostic efforts, but were not permanently corrected.

15. The vehicle's climate control system was not reliably operable through the installed control interface. Plaintiffs were unable to consistently access or control air conditioning functions through the system as configured at delivery. Service efforts included attempts to determine whether the inability to access climate controls was attributable to the interaction between the OEM Honda system and the EMC control interface. Documentation reflects that certain functions, including rear climate controls, could not be integrated into the EMC programming as installed. These issues persisted across multiple service visits and limited Plaintiffs' ability to operate the vehicle as intended.

16. Plaintiffs presented the vehicle to Superior for repair on at least twelve occasions between July 2025 and early 2026, involving recurring issues with ramp operation, control systems, electrical behavior, and system compatibility. The vehicle remained out of service for extended periods, including both time in the shop and time awaiting service. During these visits, Superior performed additional adjustments, repositioning of components, wiring corrections, and diagnostic work. These efforts did not eliminate the underlying problems. Instead, the same categories of defects reappeared shortly after the vehicle was returned to Plaintiffs, demonstrating that the corrective efforts did not resolve the conditions affecting operation of the vehicle.

17. Despite repeated opportunities to inspect, diagnose, and repair the vehicle, the defects were not corrected. Superior undertook the installation, configuration, and integration of the Braun and EMC systems into the Honda vehicle but did not deliver a vehicle in which those systems functioned together reliably. EMC supplied adaptive control components that required repeated adjustment and did not operate consistently with the vehicle's systems as configured at delivery. Braun supplied ramp and door components that did not operate reliably, including conditions in which the sliding door failed to fully open or close and prevented proper deployment

of the ramp. Honda supplied the base vehicle, including electrical, control, and drivetrain systems, which exhibited irregular operation in the condition in which the vehicle was delivered and configured, including issues relating to power management, gear indication, and system response. These conditions persisted across multiple repair attempts and resulted in a vehicle that did not operate reliably as an integrated system.

## VI. Causes of Action

**COUNT 1: LOUISIANA REDHIBITION (La. Civ. Code arts. 2520, 2522, 2545)**
**(Against All Defendants)**

18.     Plaintiffs incorporate all preceding paragraphs.

19.     Each Defendant is liable for redhibitory defects based on its respective role in the design, manufacture, installation, and sale of the Subject Vehicle, which was marketed, sold, and delivered as a fully integrated system intended to function as a single operable vehicle.

20.     Defendant Honda designed, manufactured, and supplied the base vehicle, including its electrical, drivetrain, and control systems. The Subject Vehicle exhibited defects in Honda-supplied systems, including irregular gear indication, failure of the vehicle to properly shift or respond to control inputs, instability in power management and shutdown functions, and inconsistent operation of the climate control system. These conditions occurred during normal use of the Subject Vehicle as sold and recurred after repair attempts, rendering the vehicle unreliable and unsafe for its intended purpose.

21.     Defendant Braun designed, manufactured, and supplied the wheelchair-accessible conversion components incorporated into the Subject Vehicle, including the ramp, sliding door system, and associated structural and electrical components. These components failed to operate reliably, including repeated conditions in which the sliding door did not fully open, or close and the ramp failed to deploy as intended, preventing safe entry and exit. These failures persisted

despite repair attempts and, on at least one occasion, resulted in a fall when the ramp did not deploy as expected.

22. Defendant EMC designed and manufactured the adaptive driving and electronic control systems installed in the Subject Vehicle. These systems did not function reliably when used as intended, including repeated failures when switching between operating modes, failure of the vehicle to respond properly to control inputs, and failures in coordination with vehicle systems necessary for safe operation. These conditions required repeated adjustment and persisted after repair attempts, rendering the adaptive control system unreliable.

23. Defendant Superior sold the Subject Vehicle to Plaintiffs and undertook the installation, configuration, and integration of the Braun and EMC systems into the Honda vehicle. At the time of delivery, the Subject Vehicle was not properly configured for safe and functional operation, including misplacement of critical components that affected the operation of seating, docking, and control systems and required subsequent relocation and modification. Following delivery, Plaintiffs returned the vehicle to Superior on multiple occasions, where Superior performed corrective work involving relocation of components, adjustment of control systems, and modification of wiring and integration between systems. Despite these efforts, the same or similar defects recurred shortly after the vehicle was returned to Plaintiffs.

24. The Subject Vehicle contains defects that render it either useless for its intended purpose or so inconvenient and unsafe that Plaintiffs would not have purchased it had they known of the defects at the time of sale, or alternatively would have paid significantly less.

25. The defects manifested shortly after delivery and recurred repeatedly, including during at least twelve repair visits between July 2025 and early 2026, establishing that the defects existed at the time of sale.

26. As manufacturers, Honda, Braun, and EMC are presumed to have knowledge of defects in the systems and components they designed and supplied and are liable for redhibitory defects pursuant to Louisiana Civil Code articles 2520 and 2545. Superior, as the seller, is liable for redhibitory defects pursuant to Louisiana Civil Code article 2520.

27. Despite multiple opportunities to repair the defects, the Subject Vehicle was not corrected and continued to exhibit the same or similar failures after repair attempts, resulting in repeated loss of use and unsafe operating conditions.

28. As a result of the foregoing, Plaintiffs are entitled to rescission of the sale, return of the purchase price, and recovery of all reasonable expenses, including costs of repair, towing, transportation, and loss of use.

29. In the alternative, Plaintiffs seek reduction of the purchase price in an amount reflecting the diminished value of the Subject Vehicle.

30. Because the manufacturer defendants are presumed to have knowledge of the defects, Plaintiffs are entitled to recover reasonable attorneys' fees pursuant to Louisiana Civil Code article 2545.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(Against All Defendants)**

31. Plaintiffs re-allege and incorporate all prior paragraphs.

32. Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3). Defendants are "suppliers" and, to the extent they issued written warranties or are otherwise obligated under applicable warranties, "warrantors" within the meaning of 15 U.S.C. § 2301(4)-(5).

33. Defendants issued written warranties and/or are subject to implied warranty obligations in connection with the Subject Vehicle and its component systems, including

obligations to repair or replace defective components and to provide products fit for their ordinary and intended use.

34. Honda issued written warranties covering the Subject Vehicle's chassis, drivetrain, electrical systems, and related components. Braun Corporation issued written warranties covering the accessibility conversion, including the ramp, door system, and associated structural and electrical components. EMC issued written warranties covering the adaptive driving and electronic control systems installed in the Subject Vehicle.

35. Superior, as the seller and service provider, is subject to implied warranty obligations and undertook responsibility for installation, modification, and repair of the Subject Vehicle and its component systems, including performing warranty-related repairs.

36. Under their respective warranties, Defendants undertook obligations to repair or replace defects in materials or workmanship arising during the applicable warranty periods. Plaintiffs presented the Subject Vehicle, through Superior and other authorized service providers, on multiple occasions for repair of recurring nonconformities, including defects affecting the vehicle's electrical systems, drivetrain response, adaptive control systems, ramp and door operation, and overall system integration.

37. Honda failed to comply with its written warranty obligations by failing to repair or replace defects in the Subject Vehicle's electrical, drivetrain, and control systems after multiple repair attempts, as those systems continued to exhibit irregular operation, including gear indication errors, failure to properly respond to inputs, and power management issues.

38. Braun failed to comply with its written warranty obligations by failing to repair or replace defects in the accessibility conversion components, including the ramp and sliding door system, which continued to malfunction and fail to deploy reliably despite repair attempts.

39. EMC failed to comply with its written warranty obligations by failing to repair or replace defects in the adaptive driving and control systems, which continued to malfunction, including failures when switching operating modes and failure of the vehicle to respond properly to control inputs.

40. Superior failed to comply with its warranty and related service obligations by failing to properly diagnose, repair, and correct defects in the Subject Vehicle despite repeated repair attempts, including adjustments, relocation of components, and modification of system integration, after which the same or similar defects recurred.

41. Despite these repair attempts, the Subject Vehicle and its component systems were not brought into conformity with the terms of the applicable warranties, and the same or similar conditions recurred after repair.

42. Plaintiffs provided Defendants, directly and through authorized dealers and service providers, with repeated opportunities to diagnose and repair the defects during the warranty period, but the defects were not corrected.

43. As a direct and proximate result of Defendants' failure to comply with their warranty obligations, Plaintiffs sustained damages, including diminution in value of the Subject Vehicle, loss of use, and incidental and consequential damages to the extent recoverable, as well as other damages allowed by law.

44. Pursuant to 15 U.S.C. § 2310(d), Plaintiffs are entitled to recover damages, equitable relief, costs, and reasonable attorneys' fees.

## COUNT 3: NEGLIGENCE
### (Against Superior Van & Mobility, LLC)

45. Plaintiffs re-allege and incorporate all prior paragraphs.

46.     Defendant Superior owed duties to Plaintiffs arising from its role in the installation, configuration, and integration of the Subject Vehicle and its component systems, including a duty to exercise reasonable care in performing such work and to deliver a vehicle that was properly installed, configured, and operable for its intended use.

47.     Superior breached its duty of reasonable care by improperly installing, configuring, and integrating the component systems into the Subject Vehicle, including failure to properly coordinate and verify compatibility between the vehicle's systems and installed components, misplacement of critical components, improper routing and connection of wiring, and failure to ensure that the vehicle's systems were configured to function together as an integrated system at the time of delivery.

48.     Superior further breached its duty by delivering the Subject Vehicle in a condition that required substantial corrective work, including relocation and reinstallation of components and repeated adjustment of control and system connections, demonstrating that the installation and integration work had not been performed in a reasonably careful or competent manner.

49.     As a direct and proximate result of Superior's negligent installation, configuration, and integration of the Subject Vehicle at the time of delivery, Plaintiffs sustained damages, including diminution in value of the Subject Vehicle, costs associated with corrective work, loss of use, and other damages allowed by law.

**COUNT 4:    NEGLIGENT REPAIR**
**(Against Defendant Superior Van & Mobility, LLC)**

50.     Plaintiffs re-allege and incorporate all prior paragraphs.

51.     On at least twelve occasions following delivery, Plaintiffs presented the Subject Vehicle to Defendant Superior for diagnosis and repair of recurring defects affecting, among other

things, the vehicle's ramp and door operation, adaptive control systems, electrical systems, and wheelchair restraint mechanisms.

52.    On each such occasion, Superior undertook to inspect, diagnose, service, and repair the Subject Vehicle and owed Plaintiffs a duty to perform such work in a reasonably careful, competent, and workmanlike manner within a reasonable time.

53.    Superior breached this duty by negligently performing repair work, including, but not limited to, repeatedly removing, relocating, and reinstalling components; adjusting and reconfiguring adaptive control systems; modifying wiring and electrical connections; and attempting corrective work on the same systems without adequately identifying or resolving the underlying defects.

54.    Superior's repair efforts included repeated "rework" of the same components and systems, including relocation and adjustment of seating and docking components, repeated servicing of ramp and door mechanisms, and continued attempts to address control system and electrical issues, after which the same or similar defects recurred shortly after the vehicle was returned to Plaintiffs.

55.    Despite these repair attempts, the same or similar defects recurred after the vehicle was returned to Plaintiffs, including failures of the ramp and door systems, electrical irregularities, and loss of functionality in adaptive controls, rendering the vehicle unreliable and unsafe for its intended use.

56.    Superior further breached its duty by returning the Subject Vehicle to Plaintiffs as repaired or operational after repair attempts without correcting the defects, when in fact material defects remained.

57.    As a direct and proximate result of Superior's negligent repair of the Subject Vehicle, Plaintiffs were required to repeatedly return the vehicle for additional repair attempts, were deprived of the use and benefit of the vehicle, and were exposed to unsafe operating conditions.

58.    Plaintiffs sustained damages as a direct and proximate result of Superior's negligent repair, including, but not limited to, diminution in value of the Subject Vehicle, costs associated with repeated repair attempts, loss of use, inconvenience, and other damages to be proven at trial.

**COUNT 5:    BREACH OF CONTRACT**
**(Against Defendant Superior Van & Mobility, LLC)**

59.    Plaintiffs re-allege and incorporate all prior paragraphs.

60.    Plaintiffs entered into a contract with Defendant Superior for the purchase of the Subject Vehicle, which Superior agreed to sell and deliver as a fully integrated mobility vehicle, including installation, configuration, and integration of the component systems into a functional vehicle suitable for its intended use.

61.    Plaintiffs performed their obligations under the contract, including payment for the Subject Vehicle and acceptance of delivery.

62.    Defendant Superior breached the contract by failing to deliver the Subject Vehicle in a functional and operable condition at the time of delivery, including failure to properly install, configure, and integrate the vehicle's component systems so that they would operate together as intended.

63.    At the time of delivery and thereafter, the Subject Vehicle required substantial corrective work, including relocation and reinstallation of components, adjustment of control systems, and repeated efforts to address installation and integration deficiencies, demonstrating that the vehicle was not delivered in the condition required under the contract.

64. As a direct and proximate result of Defendant Superior's breach of contract, Plaintiffs sustained damages, including diminution in value of the Subject Vehicle, costs associated with corrective work and repeated service visits, loss of use, inconvenience, and other damages to be proven at trial.

## VII. Economic and Actual Damages

65. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.    Out of pocket expenses, including but not limited to the money paid towards the note securing the Subject Vehicle;

    b.    Loss of use;

    c.    Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

## VIII. Attorney Fees and Costs

66. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX. Prayer

67. WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

a. Redhibition Relief

    i. Rescission of the sale of the Subject Vehicle;

    ii. Return of the purchase price and associated charges, including finance charges, taxes, fees, and other reasonable expenses occasioned by the sale and preservation of the Subject Vehicle;

    iii. Interest as allowed by law;

b. Alternative Relief

    i. In the alternative, a reduction of the purchase price in an amount to be determined at trial;

c. Damages

    i. Actual damages according to proof at trial, including diminution in value, loss of use, and out-of-pocket repair, inspection, and transportation expenses;

    ii. Incidental and consequential damages to the extent recoverable by law;

d. Magnuson-Moss Relief

    i. All relief available under the Magnuson-Moss Warranty Act based on Defendants' failure to comply with their written warranty obligations;

e. Attorneys' Fees and Costs

    i. Reasonable attorneys' fees, costs, and expenses as allowed by Louisiana Civil Code article 2545 and 15 U.S.C. § 2310(d)(2);

f. Interest

    i. Awarding pre- and post-judgment interest at the highest lawful rate.

g. Other Relief

    i. Such other and further relief as the Court deems just and proper.

## X. Demand for Jury Trial

68. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS