UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| REGINA LAJAUNIE, *et al.* | CIVIL ACTION |
| VERSUS | NO. 26-894 |
| AMERICAN HONDA MOTOR CO., INC., *et al.* | SECTION M (3) |

**ORDER & REASONS**

Before the Court is a motion to dismiss plaintiffs' first amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant The Braun Corporation ("Braun").[1] Braun seeks dismissal of count 2 (redhibition), count 6 (violation of the Magnuson-Moss Warranty Act ("MMWA")), and count 10 (breach of express warranty).[2] Plaintiffs Regina and Michael Lajaunie (together, "Plaintiffs") respond in opposition,[3] and Braun replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

## I. BACKGROUND

This case concerns a defective vehicle. Plaintiffs purchased a 2024 Honda Odyssey (the "vehicle") from defendant Superior Van & Mobility, LLC ("Superior") for $144,742.47.[5] The vehicle consisted of three components: (1) the original van chassis and systems manufactured by defendant American Honda Motor Company, Inc. ("Honda"); (2) a wheelchair-accessible conversion, including an in-floor ramp system and sliding door modifications manufactured by

[1] R. Doc. 31.
[2] *Id.* Braun is not named in any other counts. *See* R. Doc. 27.
[3] R. Doc. 33.
[4] R. Doc. 37.
[5] R. Doc. 27 at 3.

Braun; and (3) adaptive driving and electronic control systems, including steering, braking, and control interfaces manufactured by defendant Electronic Mobility Controls, LLC ("EMC").[6] Plaintiffs allege that Superior, which sold the vehicle to them, was responsible for delivering a completed wheelchair-accessible and adaptive vehicle that integrated Braun's and EMC's parts and systems into the Honda vehicle to make it suitable for Plaintiffs' intended use.[7]

According to Plaintiffs, when they took delivery of the vehicle, Superior had not completed installation and configuration of the adaptive systems in a manner that permitted safe and functional operation.[8] They allege that various parts did not function as anticipated including the Braun-manufactured items, such as "the in-floor ramp system, sliding-door system, structural modifications, door and floor components, electrical components, switches, wires, connectors, controller, and associated conversion components."[9] Plaintiffs say they presented the vehicle to Superior numerous times for repair but to no avail.[10] Plaintiffs allege that Superior's records document various issues with the door and ramp, including "that the door was dragging, not opening or closing all the way each time, and causing the ramp not to deploy" and "that the door rubber was hitting the door roller when opening and closing."[11] Also, with respect to the Braun components, Plaintiffs allege that they "experienced repeated sliding-door and ramp malfunctions, including conditions where the door opened but the ramp did not deploy," resulting, on one occasion, in Regina Lajaunie's fall from the vehicle when the ramp failed to deploy.[12]

Plaintiffs allege that they "repeatedly gave Defendants notice and opportunities to repair through Superior, which was the selling dealer, final assembler, installer, integrator, service

---

[6] *Id.* at 1-2.
[7] *Id.* at 4-5.
[8] *Id.* at 3-10.
[9] *Id.* at 4.
[10] *Id.* at 3-10.
[11] *Id.* at 7, 9 (quotes at 7).
[12] *Id.* at 9.

provider, [and] Braun-related conversion service channel."[13] Plaintiffs state that "Superior communicated with or was expected to communicate with Braun … and/or [its] authorized warranty channels concerning the defects, warranty coverage, repairs, diagnostics, and component responsibility."[14] Plaintiffs allege that Braun issued a limited warranty of its wheelchair-accessible conversion covering "modifications and alterations and associated parts for three (3) years or the first thirty-six thousand (36,000) miles, whichever comes first."[15] And they allege that "Braun's written warranty covers substantial defects in materials and workmanship attributable to Braun on the conversion van frame, floor structural components, ramp, door and associated structural components, electrical components, switches, wires, connectors, controller, floor covering, and lower door extension assemblies," which are all at issue here.[16]

On April 27, 2026, Plaintiffs filed this suit against Superior, Honda, Braun, and EMC, asserting various causes of action, including violations of the Louisiana law of redhibition (count 1) and the federal MMWA (count 2) against Braun.[17] Braun moved to dismiss, arguing that Plaintiffs did not plead enough facts to show that it is liable under either cause of action.[18] The Court granted Braun's motion. With respect to the redhibition claim, the Court found that Plaintiffs failed to allege: that Braun's manufactured components had any inherent defects, such as a design flaw, a material deficiency, a dimensional error, or a manufacturing deviation; that Braun's products were defective when they left Braun's facility; that Braun knew they were defective; and that they informed Braun of an issue with any of its products as would allow Braun an opportunity to diagnose and cure the problem.[19] As to the MMWA claim, the Court held that

[13] *Id.* at 10.
[14] *Id.*
[15] *Id.* at 11.
[16] *Id.*
[17] R. Doc. 1.
[18] R. Doc. 9.
[19] R. Doc. 23 at 8-9.

Plaintiffs failed: to identify by name or reference number any warranty offered and breached by Braun, to explain whether Braun prescribed an informal dispute settlement procedure or whether they complied with it, and to plausibly allege that they notified Braun of a warranty issue and gave Braun the opportunity to repair it.[20] Plaintiffs filed a first amended complaint attempting to address the identified pleading deficiencies and adding a breach-of-warranty claim against Braun.[21] Braun now moves to dismiss Plaintiffs' first amended complaint.[22]

## II. PENDING MOTION

Braun argues that Plaintiffs did not cure the pleading deficiencies with respect to their redhibition and MMWA claims.[23] As to the redhibition claim, Braun contends that Plaintiffs do not identify a specific manufacturing defect, design flaw, deficient material specification, dimensional deviation, tolerance error, or failed manufacturing process, but instead cast a wide net listing "every conceivable category of defect" with Braun's components.[24] Braun also argues that Plaintiffs' allegations regarding the issues with the door and ramp read like installation and alignment errors on Superior's part, not manufacturing defects, and that, save for these installation and alignment errors, the Braun equipment was capable of performing properly.[25] Further, Braun contends that Plaintiffs cannot satisfy the notice requirement by saying that they believe Superior told Braun about the issues.[26] With respect to the MMWA claim, Braun argues that, although Plaintiffs now identify a specific Braun warranty, they still fail to allege that they gave Braun actual notice and an opportunity to cure and that they complied with any applicable informal

[20] *Id.* at 9-11.
[21] R. Doc. 27.
[22] R. Doc. 31.
[23] R. Doc. 31-1 at 7-13.
[24] *Id.* at 8.
[25] *Id.* at 9-10.
[26] *Id.* at 10-11.

dispute resolution process required by Braun.[27] Finally, Braun argues that Plaintiffs failed to state a breach-of-warranty claim against it because they do not allege any facts distinguishing a defect in Braun's components from Superior's installation work.[28]

In opposition, Plaintiffs argue that they addressed the Court-identified pleading deficiencies and have alleged enough facts pursuant to Rule 8 of the Federal Rules of Civil Procedure to put Braun on notice of their claims against it.[29] Plaintiffs assert that they have alleged that defects in Braun's equipment, independent from Superior's installation, caused "recurrent ramp non-deployment and incomplete sliding-door travel, materially impaired the vehicle's intended wheelchair-accessible use, and existed when the completed vehicle was sold."[30] Further, Plaintiffs say they are not required at the pleading stage to identify precisely what was wrong with the parts because that is not within their knowledge at this time but will be made known in discovery, and, for this reason, alterative pleading is permissible.[31] Plaintiffs also point out that they identified the Braun warranty at issue.[32] With respect to notice and opportunity to cure, Plaintiffs argue that manufacturers are deemed to know of redhibitory defects, that lack of notice does not mandate dismissal of redhibition claims, and that they allege that Superior, as an authorized dealer of Braun products, is believed to have notified Braun of any issues with its parts and resulting warranty claims.[33] As to the MMWA claim specifically, Plaintiffs argue that the precise allocation of fault – whether arising from defects in Braun's parts or issues with Superior's

---

[27] *Id.* at 11-13.
[28] *Id.* at 13-14.
[29] R. Doc. 33.
[30] *Id.* at 1, 8-10 (quote at 1).
[31] *Id.* at 3, 7-8, 10-11.
[32] *Id.* at 2-3.
[33] *Id.* at 12-16, 19-20.

installation or both – cannot be determined at the pleading stage.[34] Plaintiffs also assert that they are not aware of any informal dispute resolution required by Braun.[35]

Braun replies, reurging the arguments it made in its opening brief.[36] In sum, Braun argues that Plaintiffs fail to allege: any defects with its parts as distinct from issues resulting from Superior's installation; affirmative notice to Braun of any defects as to afford an opportunity to cure; and compliance with any required informal dispute resolution mechanism.[37]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

[34] *Id.* at 16.
[35] *Id.* at 18.
[36] R. Doc. 37 at 1-14.
[37] *Id.*

to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

**B. Redhibition (Count 2)**

Under Louisiana law, sellers impliedly warrant buyers against redhibitory defects, or vices, in the thing sold. La. Civ. Code art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id.* In this circumstance, the buyer has "the right to obtain recission of the sale." *Id.* "A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.* This type of "defect limits the right of a buyer to a reduction of the price." *Id.* However, "[t]he seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La. Civ. Code art. 2521. Accordingly, a seller is liable to a buyer for a redhibitory defect when: (1) the thing the seller sold is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had the buyer known of the defect, he or she would not have purchased it; (2) at the time of the sale, the thing sold contained a defect that was neither known nor apparent to the buyer; and (3) the seller was afforded an opportunity to repair the defect. *See Alston v. Fleetwood Motor Homes of Ind. Inc.*, 480 F.3d 695, 699 (5th Cir. 2007).

"The degree of the seller's liability varies according to whether the seller knew of the defect. If he did not know of the defect, the seller must have an opportunity to cure the defect, either through repair or replacement." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 899 (5th Cir. 2010) (citing La. Civ. Code arts. 2522 & 2531). Indeed, "[t]he buyer must give the seller notice of the existence of a redhibitory defect in the thing sold" in sufficient time "as to allow the seller the opportunity to make the required repairs." La. Civ. Code art. 2522. However, "[s]uch

notice is not required when the seller has actual knowledge of the existence of a redhibitory defect in the thing sold." *Id.* "A seller who knows that the thing he sells has a defect but omits to declare it ... is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." La. Civ. Code art. 2545. A seller that is also the manufacturer "is deemed to know that the thing he sells has a redhibitory defect." *Id.*

This time the Court agrees with Plaintiffs that they have pleaded sufficient facts to state a redhibition claim. In the original complaint, Plaintiffs alleged that Superior's installation errors and failure to fix the issues caused the van to be unfit for its intended purpose. The first amended complaint, on the other hand, alleges that there were defects in Braun's component parts and that those defects prevented Superior from properly installing them. The mobility-accessible van at issue here is a complex machine integrating parts from Braun and ECM into the Honda vehicle. Plaintiffs have asserted adequate facts to indicate that the van malfunctioned. It is not incumbent upon lay plaintiffs at the pleading stage to pinpoint what exactly went wrong in order to state a claim for relief. Moreover, Plaintiffs have sufficiently alleged notice to Braun through Superior. Again, Plaintiffs purchased an integrated mobility-accessible vehicle from Superior (which is said to be "an authorized Braun dealer").[38] It is entirely reasonable for Plaintiffs to allege then that they expected Superior to notify the component-parts manufacturers of any issues with their products. All of these factual questions are issues that must be fleshed out in discovery, not disposed of at the pleading stage.

---

[38] R. Doc. 33 at 14.

**C. Magnuson-Moss Warranty Act (Count 6)**

The Magnuson-Moss Warranty Act "creates a statutory cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or established by a written warranty, implied warranty, or service contract." *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 474 (5th Cir. 2002) (alterations and quotation omitted). "The Act does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the terms of the Act." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1061 (5th Cir. 1984). To file suit for a manufacturer's failure to comply with a warranty under the MMWA, a "consumer must give persons obligated under the warranty a reasonable opportunity to 'cure' their failure to comply with the obligations at issue." *Walton*, 298 F.3d at 474 (quoting 15 U.S.C. § 2310(e)). In sum, to state a MMWA claim, "a plaintiff must demonstrate that he or she actually suffered an injury and, specifically, that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Jackson v. Gen. Motors LLC*, 2015 WL 1003859, at *2 (W.D. Tex. Mar. 5, 2015) (citing *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Coghlan v. Aquasport Marine Corp.,* 73 F. Supp. 2d 769, 773-74 (S.D. Tex. 1999)), *adopted*, 2015 WL 13804890 (W.D. Tex. Apr. 17, 2015). Additionally, a consumer must comply with any informal dispute settlement procedure established by the warrantor before commencing suit. 15 U.S.C. § 2310(a)(3).

Again, the Court agrees with Plaintiffs that dismissal is not due at this juncture. In the first amended complaint they specifically allege injury and identify the Braun warranty at issue. Also,

Plaintiffs allege that they do not know of a required informal dispute resolution procedure. (Interestingly, Braun does not point to any such procedure but expects Plaintiffs to know if one exists.) And, as with the redhibition claim, if Superior is indeed an authorized Braun dealer, it is entirely reasonable for Plaintiffs to allege that they expected Superior to notify the component-parts manufacturers of any issues with their products in this instance.

**D. Breach of Warranty**

Finally, as to the breach-of-warranty claim, Plaintiffs identified the warranty – the three-year/36,000-mile warranty against substantial defects in materials and workmanship attributable to Braun on the conversion van frame, floor structural components, ramp, door and associated structural components, electrical components, switches, wires, connectors, controller, floor covering, and lower door extension assemblies – and alleged that Braun breached it. Plaintiffs also alleged that Braun was notified of the breach through Superior. This is enough to survive the motion to dismiss.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Braun's Rule 12(b)(6) motion to dismiss Plaintiffs' first amended complaint (R. Doc. 31) is DENIED.

New Orleans, Louisiana, this 3rd day of September, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE