UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| REGINA LAJAUNIE, *et al.* | CIVIL ACTION |
| VERSUS | NO. 26-894 |
| AMERICAN HONDA MOTOR CO., INC., *et al.* | SECTION M (3) |

**ORDER & REASONS**

Before the Court is a motion to dismiss plaintiffs' first amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant American Honda Motor Co., Inc. ("AHM").[1] AHM seeks dismissal of count 1 (redhibition), count 5 (violation of the Magnuson-Moss Warranty Act ("MMWA")), and count 9 (breach of express warranty).[2] Plaintiffs Regina and Michael Lajaunie (together, "Plaintiffs") respond in opposition,[3] and AHM replies in further support of its motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

**I. BACKGROUND**

This case concerns a defective vehicle. Plaintiffs purchased a 2024 Honda Odyssey (the "vehicle") from defendant Superior Van & Mobility, LLC ("Superior") for $144,742.47.[5] The vehicle consisted of three components: (1) the original van chassis and systems manufactured by AHM; (2) a wheelchair-accessible conversion, including an in-floor ramp system and sliding door modifications manufactured by defendant The Braun Corporation ("Braun"); and (3) adaptive

---

[1] R. Doc. 47.
[2] *Id.* AHM is not named in any other counts. *See* R. Doc. 27.
[3] R. Doc. 50.
[4] R. Doc. 55.
[5] R. Doc. 27 at 3.

driving and electronic control systems, including steering, braking, and control interfaces manufactured by defendant Electronic Mobility Controls, LLC ("EMC").[6] Plaintiffs allege that Superior, which sold the vehicle to them, was responsible for delivering a completed wheelchair-accessible and adaptive vehicle that integrated Braun's and EMC's parts and systems into the AHM vehicle to make it suitable for Plaintiffs' intended use.[7] Plaintiffs further allege that Superior acted as, *inter alia*, the "service provider" for the "completed accessible vehicle."[8]

According to Plaintiffs, when they took delivery of the vehicle, Superior had not completed installation and configuration of the adaptive systems in a manner that permitted safe and functional operation.[9] They allege that various parts did not function as anticipated, including the vehicle's battery, gear selection, air conditioning, sliding door, and airbag system.[10] Plaintiffs say they presented the vehicle to Superior numerous times for repair but to no avail.[11]

Plaintiffs allege that they "repeatedly gave Defendants notice and opportunities to repair through Superior, which was the selling dealer, final assembler, installer, integrator, service provider, Braun-related conversion service channel, and EMC dealer or service channel."[12] Plaintiffs state that "Superior communicated with or was expected to communicate with [AHM] … and/or [its] authorized warranty channels concerning the defects, warranty coverage, repairs, diagnostics, and component responsibility."[13] Plaintiffs allege that AHM "issued written warranties covering the Honda Odyssey chassis and original-equipment [,] components and systems, including the basic limited warranty, powertrain warranty, and other written warranties

---

[6] *Id.* at 1-2.
[7] *Id.* at 4-5.
[8] *Id.* at 4.
[9] *Id.* at 3-10.
[10] *Id.* at 7-9.
[11] *Id.* at 3-10.
[12] *Id.* at 10.
[13] *Id.*

applicable to the [AHM] vehicle and [AHM]-supplied systems."[14] They further allege that AHM's "written warranties obligated [AHM], its authorized dealers, and/or authorized service providers to repair or correct defects in materials, workmanship, and covered [AHM] components during the warranty period."[15]

On April 27, 2026, Plaintiffs filed this suit against Superior, AHM, Braun, and EMC, asserting various causes of action, including violations of the Louisiana law of redhibition (count 1) and the federal MMWA (count 2) against all defendants, along with various negligence and breach-of-contract claims against Superior (counts 3, 4 and 5).[16] Braun moved to dismiss, arguing that Plaintiffs did not plead enough facts to show that it is liable under either cause of action asserted against it.[17] The Court granted Braun's motion.[18] Plaintiffs filed a first amended complaint attempting to address the identified pleading deficiencies and adding breach-of-warranty claims against each defendant.[19] Braun moved to dismiss Plaintiffs' first amended complaint.[20] The Court denied the motion.[21] AHM now moves to dismiss Plaintiffs' first amended complaint.[22]

## II. PENDING MOTION

AHM argues that Plaintiffs did not plead enough facts to allege redhibition, MMWA, or breach-of-warranty claims against it.[23] Specifically, AHM contends that the first amended complaint "fails to identify any defect in an AHM component independent of the third-party

---

[14] *Id.*
[15] *Id.* at 11.
[16] R. Doc. 1.
[17] R. Doc. 9.
[18] R. Doc. 23.
[19] R. Doc. 27.
[20] R. Doc. 31.
[21] R. Doc. 40.
[22] R. Doc. 47.
[23] *Id.*

conversion, integration, and installation work."[24] As to the redhibition claim, AHM contends that Plaintiffs do not identify a defective AHM component, a material deficiency or deviation from any design or specification of an AHM component, or that any AHM "system was defective in an unconverted Odyssey."[25] AHM emphasizes that "Plaintiffs purchased an *already-converted* vehicle" from Superior and that "the alleged conditions arose in the completed configuration while Superior repeatedly performed fitting, programming, integration, and other rework."[26] AHM contends that the issues Plaintiffs identify, such as "power loss, conflicting gear-display indications, steering warnings, [and] climate-control integration failures," arose in the converted vehicle and involved issues with the EMC adaptive controls and, thus, are "not stand-alone failures of the Honda OEM [*i.e.,* original equipment manufacturer] systems."[27] In other words, AHM asserts that Plaintiffs have not alleged a redhibition claim against it because all of the issues Plaintiffs identify arose as a result of the integration of aftermarket systems without identifying a defect in any AHM-manufactured component.[28] AHM also contends that Plaintiffs' claims against it should be dismissed because they refer to "Defendants" collectively without identifying the failures attributable to each defendant or the particulars of the notice supposedly given to AHM.[29] Further, AHM argues that Plaintiffs cannot satisfy the notice requirement by means of any notice to Superior because there is no identification of "who notified AHM, when notice was given, how it was transmitted, or what defect was reported."[30] According to AHM, it did not have an "authorized dealer" relationship with Superior, which it maintains is not an AHM dealer, but rather

---

[24] *Id.* at 1.
[25] R. Doc. 47-1 at 4.
[26] *Id.*
[27] *Id.* at 5.
[28] *Id.* at 5-6.
[29] *Id.* at 7-8.
[30] *Id.* at 8.

"an aftermarket mobility-equipment dealer and installer."[31] Further, says AHM, there is no allegation "that Superior was authorized to receive warranty claims or defect notices on AHM's behalf" or that Superior ever told AHM of a defect in one of its components.[32] In sum, AHM asserts that it had no notice or opportunity to cure.[33] With respect to the MMWA claim, AHM argues that Plaintiffs fail to specifically identify the written warranty (by name or reference number, with identification of the duration, parts covered, and remedies) that was allegedly breached or the obligation that AHM failed to perform.[34] Nor, says AHM, does the complaint "explain how conditions allegedly arising from aftermarket modifications and Superior's integration work fall within an AHM warranty rather than being excluded by applicable modification or alteration clauses."[35] Finally, AHM argues that Plaintiffs fail to plead that they complied with any applicable informal dispute settlement mechanism.[36] AHM contends that dismissal should be with prejudice as any amendment, in its view, would be futile.[37]

In opposition, Plaintiffs argue that they did in fact plead defects in AHM components or systems – specifically, the "battery, electrical, claim-control, remote-start, programming, and airbag."[38] Plaintiffs contend that they have alleged enough facts to state a redhibition claim against AHM by plausibly alleging that unknown defects in the AHM-manufactured components caused or contributed to the identified failures.[39] Plaintiffs acknowledge that AHM's defense on a developed record may be that no original component was defective, but at this stage, Plaintiffs say

---

[31] *Id.* at 8-9.
[32] *Id.* at 9.
[33] *Id.*
[34] *Id.* at 9-10.
[35] *Id.* at 10.
[36] *Id.* at 11-12.
[37] *Id.* at 12-13.
[38] R. Doc. 50 at 1-2.
[39] *Id.* at 4-6.

they are not required to pinpoint exactly what failed in the complicated vehicle.[40] Further, Plaintiffs point out that they asserted separate counts against AHM (and each other defendant), thereby providing fair notice of their claims against each (including AHM).[41] With respect to notice for the redhibition claim, Plaintiffs argue that AHM is presumed to know of the defects in its vehicle as manufactured.[42] And as to notice for the MMWA claim, Plaintiffs contend that they have alleged AHM received notice through Superior or independently and that, at this juncture, they need not allege the particulars of that notice.[43] Plaintiffs also argue that they identified the AHM warranties by name – the new vehicle limited warranty and powertrain warranty – which should suffice to state a breach-of-warranty claim without the need to plead reference numbers, duration, limitations, and exclusions.[44] Lastly, Plaintiffs argue that AHM, like Braun, fails to identify any mandatory informal dispute resolution procedure, but yet expects them to plead their compliance with any that might have existed.[45] If the Court does not deny AHM's motion to dismiss, Plaintiffs ask that they be allowed to amend the operative complaint to address any pleading deficiencies the Court identifies.[46]

AHM replies, reurging the arguments made in its opening brief.[47] In sum, AHM argues that Plaintiffs fail to allege: any defects with its parts independent of the conversion; specific acts or omissions on the part of AHM; affirmative notice to AHM of any defects as to afford an opportunity to cure; and compliance with any required informal dispute resolution mechanism.[48]

---

[40] *Id.* at 6.
[41] *Id.* at 7.
[42] *Id.* at 7-8.
[43] *Id.* at 9-10.
[44] *Id.* at 10-11.
[45] *Id.* at 12-13.
[46] *Id.* at 12-13.
[47] R. Doc. 55 at 1-8.
[48] *Id.*

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation modified) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts

pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (citation modified) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

**B. Redhibition (Count 1)**

Under Louisiana law, sellers impliedly warrant buyers against redhibitory defects, or vices, in the thing sold. La. Civ. Code art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id.* In this circumstance, the buyer has "the right to obtain recission of the sale." *Id.* "A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.* This type of "defect limits the right of a buyer to a reduction of the price." *Id.* However, "[t]he seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by

a reasonably prudent buyer of such things." La. Civ. Code art. 2521. Accordingly, a seller is liable to a buyer for a redhibitory defect when: (1) the thing the seller sold is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had the buyer known of the defect, he or she would not have purchased it; (2) at the time of the sale, the thing sold contained a defect that was neither known nor apparent to the buyer; and (3) the seller was afforded an opportunity to repair the defect. *See Alston v. Fleetwood Motor Homes of Ind. Inc.*, 480 F.3d 695, 699 (5th Cir. 2007).

"The degree of the seller's liability varies according to whether the seller knew of the defect. If he did not know of the defect, the seller must have an opportunity to cure the defect, either through repair or replacement." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 899 (5th Cir. 2010) (citing La. Civ. Code arts. 2522 & 2531). Indeed, "[t]he buyer must give the seller notice of the existence of a redhibitory defect in the thing sold" in sufficient time "as to allow the seller the opportunity to make the required repairs." La. Civ. Code art. 2522. However, "[s]uch notice is not required when the seller has actual knowledge of the existence of a redhibitory defect in the thing sold." *Id.* "A seller who knows that the thing he sells has a defect but omits to declare it ... is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." La. Civ. Code art. 2545. A seller that is also the manufacturer "is deemed to know that the thing he sells has a redhibitory defect." *Id.*

The Court agrees with Plaintiffs that they have pleaded sufficient facts to state a redhibition claim against AHM, although just barely. The first amended complaint alleges generally that there were defects in certain of AHM's vehicle parts that caused or contributed to various system

failures. The mobility-accessible van at issue here is a complex machine integrating parts from Braun and ECM into the AHM vehicle. As with Braun, Plaintiffs have asserted adequate facts to indicate that the van malfunctioned. It is not incumbent upon lay plaintiffs at the pleading stage to pinpoint what exactly went wrong in order to state a claim for relief against each entity involved. For now, Plaintiffs have also sufficiently alleged notice to AHM either directly or through Superior. Whether that alleged notice actually occurred or was ultimately sufficient is an issue for another day. With the limited information before the Court at this stage of the proceedings, it is entirely reasonable for Plaintiffs to stand on their allegation that they expected Superior to notify AHM of any issues with its products. All of these factual questions are issues that must be fleshed out in discovery, not disposed of at the pleading stage.

**C. Magnuson-Moss Warranty Act (Count 5)**

The Magnuson-Moss Warranty Act "creates a statutory cause of action for consumers damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or established by a written warranty, implied warranty, or service contract." *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 474 (5th Cir. 2002) (citation modified and quotation omitted). "The Act does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the terms of the Act." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1061 (5th Cir. 1984). To file suit for a manufacturer's failure to comply with a warranty under the MMWA, a "consumer must give persons obligated under the warranty a reasonable opportunity to 'cure' their failure to comply with the obligations at issue." *Walton*, 298 F.3d at 474 (quoting 15 U.S.C. § 2310(e)). In sum, to state a MMWA claim, "a plaintiff must demonstrate that he or she actually suffered an injury and, specifically, that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given

reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Jackson v. Gen. Motors LLC*, 2015 WL 1003859, at *2 (W.D. Tex. Mar. 5, 2015) (citing *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Coghlan v. Aquasport Marine Corp.,* 73 F. Supp. 2d 769, 773-74 (S.D. Tex. 1999)), *adopted*, 2015 WL 13804890 (W.D. Tex. Apr. 17, 2015). Additionally, a consumer must comply with any informal dispute settlement procedure established by the warrantor before commencing suit. 15 U.S.C. § 2310(a)(3).

Again, the Court agrees with Plaintiffs that dismissal is not due at this juncture. In the first amended complaint they specifically allege injury and sufficiently identify the AHM warranties at issue. Also, Plaintiffs allege that they do not know of a required informal dispute resolution procedure. (Interestingly, AHM, like Braun, does not itself identify any such procedure but expects Plaintiffs to know if one exists.) And, as with the redhibition claim, at this stage of the proceedings, it is entirely reasonable for Plaintiffs to allege that they expected Superior to notify AHM of any issues with its products.

### D. Breach of Warranty (Count 9)

Finally, as to the breach-of-warranty claim, Plaintiffs identified the AHM new vehicle and powertrain warranties and allege that AHM breached them. Plaintiffs also allege that AHM was notified of the breach directly or through Superior. This is enough to survive the motion to dismiss.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AHM's Rule 12(b)(6) motion to dismiss Plaintiffs' first amended complaint (R. Doc. 47) is DENIED.

New Orleans, Louisiana, this 2nd day of November, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE